# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN
_____

**CHRISTOPHER SAYERS,**

        **Plaintiff,**

        **-vs-**                                               **Case No. 06-C-625**

**GOVERNOR JAMES DOYLE,
WISCONSIN STATE LEGISLATIVE COUNSEL,
HELENE NELSON, STEVE WATTERS,
STEVE SCHNEIDER, DAVID THORNTON,
WENDY NORDBERG, TONY ASSID,
STEVE HAMILTON, BYRAN BARTOW,
MARIO CANZIANI, THOMAS SPEECH,
BOB WHITTAKER, DIANE FERGOT,
JOHN JONES, WANDA BALDWIN,
JANE DOE and JOHN DOE,**

        **Defendants.**
_____

# DECISION AND ORDER
_____

On May 26, 2006, plaintiff Christopher Sayers, "an involuntarily committed patient confined by the State of Wisconsin pursuant to Chapter 980" at the Sand Ridge Secure Treatment Center ("SRSTC"), filed a <u>pro se</u> complaint[1] asserting claims under 42 U.S.C.

---

[1] The plaintiff's complaint is a verified complaint. <u>See</u> <u>Ford v. Wilson</u>, 90 F.3d 245, 246 (7th Cir. 1996).

§1983, the Fair Labor Standards Act, 29 U.S.C. §§201-219 and Wisconsin law, along with a petition to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. (Complaint at 3, ¶ 5.) By order of June 28, 2006, this court directed the plaintiff to file an amended complaint on or before August 1, 2006, to cure various deficiencies in the original pleading. The plaintiff has filed an amended complaint.

Typically, a plaintiff must pay a statutory filing fee of $350 to bring suit in federal court. 28 U.S.C. §1914. However, the federal in forma pauperis statute, 28 U.S.C. §1915, insures indigent litigants meaningful access to the federal courts. Neitzke v. Williams, 490 U.S. 319, 324 (1989). To authorize a litigant to proceed in forma pauperis, the court must first determine that the litigant is unable to pay the costs of commencing the action. 28 U.S.C. §1915(a).

The plaintiff has filed the required affidavit of indigence. A review of that affidavit reveals that the plaintiff's only source of income is the $34.20 he receives every two weeks from his job at the SRSTC. He states that he does not receive any social security benefits, pension, rent or insurance payments and has not received more that $75.00 in gifts from family or friends in the last twelve months. He further attests that he has no assets, stock or money in any account. Based on his affidavit, the court is convinced that the plaintiff meets the poverty requirements of 28 U.S.C. §1915.

Although inmates like plaintiff who are involuntarily committed, rather than convicted, are not considered prisoners under the Prison Litigation Reform Act, 28 U.S.C. §1915A, the court is obligated to review all complaints under 28 U.S.C. §1915(e)(2) to insure that they comply with the Federal Rules of Civil Procedure and that they state at least plausible claims for relief. In particular, the court is required to dismiss any complaint, or portion thereof, that

2

is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary damages against a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2).

In making such determinations, the court must give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The amended complaint brings fourteen claims against seventeen different defendants. The plaintiff names as defendants Governor James Doyle, the Wisconsin State Legislative Counsel [sic] and Helene Nelson, who is employed by the Wisconsin Department of Health and Family Services. In addition, the following officials employed at SRSTC are named as defendants: Steve Watters, Steve Schneider, David Thornton, David Prescott, Wendy Nordberg, Tony Assid and Steve Hamilton. Next, various officials employed by the Wisconsin Resource Center (WRC), where plaintiff was previously detained, are named as defendants: Byran Bartow, Mario Canziani, Thomas Speech, Bob Whittaker, Diane Fergot, John Jones and Wanda Baldwin. Each of the defendants is being sued in his or her official capacity.

3

## I. Claim 1: Fair Labor Standards Act

The first claim in the amended complaint challenges that SRSTC's practice of basing the plaintiff's employment conditions such as wages, work hours and work placement on his participation in treatment programs violates the Fair Labor Standards Act (FLSA), 29 U.S.C. §§201-219. (Amended Complaint at ¶¶21-26[b]). Recently, United States District Judge William C. Griesbach held that individuals who are civilly committed pursuant to Chapter 980 are not governed by the FLSA. Hendrickson v. Nelson, No. 05-C-1305, 2006 WL 2334838 (E.D. Wis. Aug. 10, 2006). His conclusion was premised on the holding of the Court of Appeals for the Seventh Circuit in Bennett v. Frank, 395 F.3d 409 (7th Cir. 2005), that convicted prisoners are not covered by the FLSA. In reaching that conclusion, the court of appeals in Bennett reasoned:

> People are not imprisoned for the purpose of enabling them to earn a living. The prison pays for their keep. If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside, or to equip them with skills and habits that will make them less likely to return to crime outside. None of these goals is compatible with federal regulation of their wages and hours. The reason the FLSA contains no express exception for prisoners is probably that the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress.

Id. at 409-410 (internal citations omitted).

Judge Griesbach determined that the considerations identified in Bennett apply equally to situations where the plaintiff is a civilly committed detainee. Hendrickson, 2006 WL 2334838 at *1. Moreover, the Court of Appeals for the Eleventh Circuit has held that pretrial detainees are not entitled to the protection of the FLSA. Villarreal v. Woodham, 113 F.3d 202, 207 (11th Cir. 1997) (pretrial detainee's economic situation does not bear any indicia of traditional free-market employment contemplated under the FLSA).

4

These cases establish that the "FLSA is intended for the protection of the American worker's standard of living, not for those individuals, like plaintiff, whose custody is controlled by the state." Hendrickson, 2006 WL 2334838 *2 (citing Harker v. State Use Industries, 990 F.2d 131, 133 (4th Cir. 1993)). Hence, plaintiff's FLSA claim will be dismissed under 28 U.S.C. §1915(e)(2)(B) for failure to state a claim.

## II. Claims 2 and 9: Due Process - Conditions of Confinement

The crux of plaintiff's second and ninth claims is that the incentive-based treatment programs at SRSTC and WRC coerce or force him into treatment by providing him with "harsh, socially and environmentally restricted, unfriendly and debilitating environments, with the *promise* of better conditions of confinement as an incentive or as coersion [sic] for him to consent to said treatment." (Amended Complaint, ¶ 30 [italics in original]).[2] He contends that the failure on the part of the defendants to provide him with the least restrictive conditions of confinement violates his due process right to be free from punishment under the Fourteenth Amendment.

The plaintiff does not allege that agents of the state forced him to undergo unwanted medical treatment. Rather, he simply alleges that the incentive-based program utilized by the defendants makes receiving treatment a more desirable choice. Offering incentives to induce participation in treatment programs does not amount to punishment in violation of the plaintiff's constitutional rights. See Hendrickson, 2006 WL 2334838 at *2 (plaintiff's claims

---

[2]Plaintiff's claim that he was promised better conditions if he participated in treatment is confusing in light of his admission that there is no security classification system for Chapter 980 patients which allows them to be moved to a less restrictive environment and that there is no facility designated as a less restrictive facility for Chapter 980 patients. See Amended Complaint at ¶ 29 ("living units have no security classifications") and ¶ 56 ("plaintiff is encouraged to do anything . . . to move to more comfortable and appropriate living arrangements, . . . even though the security of the entire facility itself remains no less environmentally/socially restrictive, irregardless [sic] of plaintiff's placement within it.")

5

that incentive-based treatment programs coerced him into a harsh and restricted environment unrelated to his level of dangerousness do not state a violation of plaintiff's constitutional rights); McGee v. Dep't of Health and Family Services, No. 05-C-845, 2005 WL 2076455 (E.D. Wis. Aug. 26, 2005) ("by simply offering incentives for the plaintiff's participation, the state actors here are merely doing their jobs, which is to encourage treatment . . . , that is the premise on which Chapter 980 is founded. . . . such activity does not violate the Bill of Rights or the Fourteenth Amendment."); see also Tijerina v. Offender Management Review Committee, 91 Fed. Appx. 86, 91 (10th Cir. 2004) (withdrawal of ordinary privileges based on a prisoner's refusal to participate in sex therapy and admit bad acts does not violate Fifth Amendment). Accordingly, Claims 2 and 9 will be dismissed pursuant to §1915(e)(2)(B) for failure to state a claim.

### III. Claims 3, 4, 7, 8, 10, 11, 13 and 14: Speech, Privacy, Property, Visitation and Other Restrictions

The plaintiff asserts that various restrictions placed on him are per se unconstitutional under the First, Fourth and Fourteenth Amendments because they are the same as those placed on prisoners and, thus, constitute punishment. The plaintiff's claims concern the institution's telephone, visitor and "mail censoring" policies. (Amended Complaint, Claim 3 at ¶ 32, Claim 11 at ¶¶ 65-68). The plaintiff also contends that his movements are restricted, he has no privacy and is forced to sleep "in living quarters identical to a prison cell." (Amended Complaint, Claim 4 at ¶ 34. In addition, he complains that no plant life or wildlife is visible from his living quarters (Claim 7), he is denied access to adult films, reading material, publications dealing in psychology and psychiatry (Claim 8), and that he does not have the ability to purchase "minute plans through 'calling card companies.'" (Claim 11). He

further maintains that his visitors are subject to "thorough, invasive background checks" which "restricts his potential visitors (family and friends) due to past criminal records." (Claim 10). Finally, the plaintiff asserts that he (and all of the other patients) are locked in their cells every night (Claim 13) and that their living quarters are subject to random searches. (Claim 14).

The United States Supreme Court has determined that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982). The Supreme Court in Youngberg rejected an argument that the state must establish the "necessity" of keeping detainees in close custody, and instead held that detainees are entitled to the "exercise of professional judgment as to the needs of residents." Id. at 322. More recently, the Supreme Court explained the proposition identified in Youngberg as follows: "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." Seling v. Young, 531 U.S. 250, 265 (2001).

The court of appeals for this circuit has had occasion to apply these principles in a suit under §1983 in which twenty-seven persons committed under the Illinois Sexually Dangerous Persons Act claimed that their confinement was unconstitutional in three ways: (1) they were confined in one wing of an institution that also served as a prison; (2) their treatment included self-accusatory features; and (3) their treatment involved group rather than individual treatment. Allison v. Snyder, 332 F.3d 1076 (7th Cir. 2003).

In Allison, the court summarized the Youngberg principle in this way: "detainees may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not be punished." Id. at 1079. The appellate court

7

then rejected the plaintiffs' claim that it was unconstitutional per se for them to be confined in a facility labeled a prison. The appellate court reasoned:

> Does placement in a prison, subject to the institution's usual rules of conduct, signify punishment? The answer, given by Bell v. Wolfish, 441 U.S. 520 (1979), is no. Wolfish held that pretrial detainees, who like civil committees may be held for security reasons but not punished, may be assigned to prisons and covered by the usual institutional rules, which are designed to assure safety and security. Our plaintiffs were not assigned to high-security institutions, solitary, lockdown or otherwise onerous confinement. And one must keep in mind that they are pretrial detainees as well as civil committees: criminal charges against them are pending. If pretrial detainees may be subjected to the ordinary conditions of confinement, as Wolfish holds, then so may persons detained before trial as sexually dangerous persons.

Id.

Because sexually dangerous persons may be detained in prison-like conditions prior to being found guilty, "it follows that their post-trial and post-sentence confinement conditions may also be prison-like." Hendrickson, 2006 WL 2334838 at *3; see also, Wilson v. Watters, 348 F. Supp.2d 1031, 1037 (W.D. Wis. 2004) (pretrial detainees and civil committees under Chapter 980 may be assigned to prisons and subjected to the normal rules and regulations designed to advance security and safety without violating the due process clause).

Again, Judge Griesbach's decision in Hendrickson is particularly instructive as it involved claims remarkably similar, if not identical, to those advanced by the plaintiff in the instant case.³ There, the court found that the plaintiff's claims were insufficient to state a claim under the First, Fourth or Fourteenth Amendment because there was no indication that the complained of restrictions on Chapter 980 patients amounted to punishment or were more

---

³ For example, like Mr. Sayers, the plaintiff in Hendrickson (who was also confined at the SRSTC) challenged the telephone, visitor and mail opening policies and complained that (1) his movement was restricted; (2) "inmates must sleep in living quarters identical to prison cells"; (3) he was denied access to adult films and reading materials; (4) he had "little or no access to views of nature or wildlife"; (5) he was locked in his cell every night; and (6) his cell was subject to random searches. Hendrickson, 2006 WL 2334838 at *2.

8

severe than those faced generally by pretrial detainees or prisoners. Hendrickson, 2006 WL 2334838 at*3.

Similarly, in the instant case, the plaintiff's sole claim regarding the restrictions applicable to him and other civilly committed persons under Chapter 980 is that they are analogous to (not more severe than) the restrictions placed on prisoners. In other words, like the plaintiffs in Allison, the plaintiff here alleges that it is unconstitutional per se for him to be subject to the same restrictions as those placed on prisoners.[4] Because this argument has been rejected by the Court of Appeals for the Seventh Circuit, the court finds that the challenged restrictions are not unconstitutional under the First, Fourth or Fourteenth Amendments. Allison, 332 F.3d 1076; see also Hendrickson, 2006 WL 2334838. Thus, such claims will be dismissed pursuant to §1915(e)(2)(B).

### IV. Claims 5, 11 and 12: Federal Consumer Protection Laws

The plaintiff also maintains that the restrictions on his property (Claims 11 and 12) and ability to purchase "minute plans" through "calling card companies" (Claim 5) violate "federal consumer protection laws." There are many laws designated as "consumer protection laws," but the plaintiff has not specified which act or acts he believes the defendants violated. Moreover, the plaintiff's claims essentially assert a federal right to purchase any items he desires without interference from the institution in which he is confined. No such right has been recognized and such a right would run counter to the principle that confinement limits one's right to have personal property in one's immediate possession. See Ford v. Schmidt,

---

[4] Moreover, plaintiff alleges that the conditions faced at SRSTC are harsh in order to coerce the plaintiff (and other Chapter 980 patients) into receiving and progressing in treatment programs. See e.g., Amended Complaint ¶¶ 59, 62 and 80.) Such allegations establish that the challenged restrictions were not designed to "punish" the plaintiff, but instead to alter the plaintiff's behavior. Hendrickson, 2006 WL 2334838 at n.1.

9

577 F.2d 408, 410 (7th Cir. 1978) ("prison officials may, as a condition of confinement, establish rules and regulations concerning the possession of property by inmates."); Hendrickson, 2006 WL 2334838 at *3 (a finding that restrictions on a civilly committed person's right to possess property violates federal consumer protection laws "would be impossible given the well-acknowledged principle that civil confinement facilities have the ability to restrict the property rights of those under their care."). Accordingly, the federal consumer protection law claims will be dismissed under §1915(e)(2)(B) for failure to state a claim.

## V. Claims 3, 4, 5 and 6: Equal Protection

In claims three, four, five and six, the plaintiff asserts that defendants Steve Watters, Wendy Nordberg and Steve Schneider treated him differently than other civilly committed persons based on his status as a Chapter 980 patient. In particular, he maintains that because he is a Chapter 980 patient, he is subjected to more restrictive conditions of confinement, (Claim 4) and denied phone, visitor, mail and money privileges enjoyed by other civilly committed persons (Claims 3 and 5). Further, the plaintiff contends that he is not treated similarly to other civilly (or criminally) committed persons because his "placement in more secure restrictive settings" is based on his refusal to consent to participate in treatment whereas other non-Chapter 980 prisoners or civilly committed persons need only demonstrate "compliant and appropriate behavior" to be placed in a "less restrictive environment." (Amended Complaint, ¶ 50).

To comply with equal protection, governmental entities are generally required to treat all similarly situated persons in a similar manner. City of Cleburne, Tex. v. Cleburne Living

10

Ctr., 473 U.S. 432, 439 (1985). In the prison context, it has been determined that the equal protection clause requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest. May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000) (citing Hudson v. Palmer, 468 U.S. 517, 523 [1984]). Moreover, "[s]ometimes detainees in different sorts of confinement are similarly situated for the purposes of the challenged policy." May, 226 F.3d at 882.

Factual determinations regarding the purposes underlying the policies challenged by the plaintiff are inappropriate at this stage of the proceedings. See Id. (citing Homeyer v. Stanley Tulchin Assocs., Inc., 91 F.3d 959, 962-63 [7th Cir. 1996]). If at a later stage, the evidence establishes that Chapter 980 detainees are not similarly situated to other civil detainees with respect to the purposes of the challenged policies and that security or other institutional concerns justify different treatment, then the defendants will be entitled to a favorable ruling. Accordingly, at this juncture, the court finds that the plaintiff's assertions in claims three, four, five and six are sufficient to state an equal protection claim against defendants Watters, Nordberg and Schneider.

## VI. Claims 4, 5 and 11: State Law Claims

Liberally construed, the complaint also alleges that defendants Watters, Nordberg and Schneider have violated the plaintiff's rights under Wis. Stats. §51.61 which governs patient care for individuals receiving services for mental illnesses, including persons committed in treatment facilities pursuant to Chapter 980. Specifically, the plaintiff contends that the requirement that he sleep in living quarters identical to a prison cell and the restrictions placed on his visitors, his privacy and his ability to move in the treatment facility violates his right to

11

receive the least restrictive conditions of confinement under Wis. Stat. §51.61(1)(e) and (f). (Amended Complaint, Claim 4 at ¶¶ 34 and 37).

The plaintiff also maintains that the defendants' policy of controlling his use of his money and denying him the right to carry cash violates the provisions of Wis. Stat.§51.61(1)(v) which gives him the "right to use his . . . money as he . . .chooses . . . ." (Amended Complaint, Claim 5 at ¶¶ 38-47). Finally, he asserts that the defendants' policy of denying him the ability to make and receive telephone calls from family and friends violates the provisions of Wis. Stat. §51.61(1)(p) which permits him to have "reasonable access to a telephone and receive telephone calls within reasonable limits." (Amended Complaint, Claim 11 at ¶¶ 65-73).

The plaintiff's contentions arguably state a claim for violations of the provisions of Wis. Stat. §51.61(1). The supplemental jurisdiction statute permits federal courts to assert jurisdiction over an entire action containing both federal and state claims where the claims are so related as to form part of the same case or controversy. See 28 U.S.C. § 1367; Estate of Thurman v. City of Milwaukee, 197 F. Supp. 2d 1141, 1151 (E.D. Wis. 2002). Because the state law claims advanced by plaintiff against defendants Watters, Nordberg and Schneider arguably relate to the equal protection claims against those same defendants, this court will exercise its supplemental jurisdiction over the state law claims.

## VII. CONCLUSION

In sum, the plaintiff will be allowed to proceed in forma pauperis on the surviving equal protection and state law claims against defendants Watters, Nordberg and Schneider. All other claims in the complaint will be dismissed for failure to state a claim pursuant to 28

12

U.S.C. §1915(e)(2)(B). Because there are no surviving claims against the remaining fourteen defendants, they will be dismissed from this action.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's petition to proceed in forma pauperis be and the same is hereby **granted**.

**IT IS FURTHER ORDERED** that the Fair Labor Standards Act "FLSA", 29 U.S.C. §§201-219 claim as identified in claim one of the amended complaint is **dismissed** pursuant to 28 U.S.C. §1915(e)(2)(B) for failure to state a claim.

**IT IS ALSO ORDERED** that the Fourteenth Amendment conditions of confinement claims set forth in claims two and nine of the amended complaint are **dismissed** pursuant to 28 U.S.C. §1915(e)(2)(B) for failure to state a claim.

**IT IS ALSO ORDERED** that the First, Fourth and Fourteenth Amendment claims set forth in claims three, four, seven, eight, ten, eleven, thirteen and fourteen of the amended complaint are **dismissed** pursuant to 28 U.S.C. §1915(e)(2)(B) for failure to state a claim.

**IT IS ALSO ORDERED** that the "federal consumer protection law" claims set forth in claims five, eleven and twelve of the amended complaint are **dismissed** pursuant to 28 U.S.C. §1915(e)(2)(B) for failure to state a claim.

**IT IS ALSO ORDERED** that defendants Governor James Doyle, the Wisconsin State Legislative Counsel [sic], Helene Nelson, David Thornton, David Prescott, Tony Assid, Steve Hamilton, Byran Bartow, Mario Canziani, Thomas Speech, Bob Whittaker, Diane Fergot, John Jones and Wanda Baldwin are **dismissed** from this action.

13

**IT IS ALSO ORDERED** that the United States Marshal shall serve a copy of the amended complaint, a waiver of service form and/or the summons and this order upon defendants Watters, Nordberg and Schneider pursuant to Federal Rule of Civil Procedure 4.

**IT IS ALSO ORDERED** that defendants Watters, Nordberg and Schneider shall file a responsive pleading to the amended complaint.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, the plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2006.

BY THE COURT:

s/ Rudolph T. Randa
RUDOLPH T. RANDA
Chief United States District Judge

14